IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARVIN PIBURN, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>BLACK HAWK-GRUNDY MENTAL HEALTH CENTER, INC. AND THOMAS EACHUS,<br><br>Defendants. | No. C15-2045<br><br>ORDER REGARDING MOTION TO DISQUALIFY COUNSEL |

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* .................................................. 1

*II.*   *PROCEDURAL HISTORY* ........................................ 2

*III.*  *BACKGROUND* ..................................................... 2

*IV.*  *DISCUSSION* ........................................................ 7
     *A.*   *Testimony of Erin Lyons* ..................................... 7
     *B.*   *Disqualification of Mark Fransdal* ........................ 10

*V.*   *ORDER* ............................................................... 16

## I. INTRODUCTION

On the 19th day of August 2016, this matter came on for telephonic hearing on the Motion to Disqualify Plaintiff's Counsel from Representing Plaintiff at Trial (docket number 35) filed by the Defendants on July 22, 2016. Plaintiff Marvin Piburn was represented by his attorney, Mark W. Fransdal. Defendants Black Hawk-Grundy Mental

Health Center, Inc. ("BHGMHC") and Thomas Eachus were represented by their attorneys, Theresa C. Davis and Dana L. Oxley.

## II. PROCEDURAL HISTORY

On August 28, 2014, Piburn filed a petition at law in the Iowa District Court for Black Hawk County, alleging Defendants discriminated against him due to a disability, in violation of Iowa Code Chapter 216. The action was removed to this Court on June 9, 2015.[1]

On September 9, 2015, the Court adopted a Scheduling Order and Discovery Plan submitted by the parties. Also at that time, the case was referred to me for the conduct of all further proceedings in accordance with 28 U.S.C. § 636(c) and the consent of the parties. After consulting with counsel, the case was set for trial on September 12, 2016.

On October 19, 2015, with Defendants' consent, Piburn filed an amended complaint. In his amended complaint, Piburn alleged violations of the Family and Medical Leave Act (Count I), violations of the Americans with Disabilities Act (Count II), and violations under Iowa Code Chapter 216 (Count III). Defendants filed an answer to the amended complaint on November 12, 2015.

Piburn's claims under the FMLA were dismissed pursuant to Defendants' motion for summary judgment. Piburn's remaining claims under the ADA and the ICRA are scheduled for a jury trial on September 12, 2016.

## III. BACKGROUND

The facts underlying Piburn's amended complaint are described in the Court's Ruling on Motion for Summary Judgment and will not be repeated here. The facts underlying Defendants' motion to disqualify attorney Mark Fransdal may be described as follows:

---

[1] While Piburn's petition did not allege a violation of federal law, the case was removed to federal court after Piburn testified in his deposition that Defendants violated the ADA and FMLA.

On July 6, 2016, Piburn's attorney (Fransdal) sent an email to Defendants' attorney (Davis), attaching a letter and copies of subpoenaes which Piburn was sending to the sheriff for service. Davis responded the same day noting that Piburn intended to issue a subpoena for Erin Lyons to testify at trial. Lyons is an attorney who represented BHGMHC at the time of Piburn's termination. Lyons was unable to represent BHGMHC in this lawsuit, however, because his law firm represented Piburn "a few years earlier."[2]

Davis apparently believed based on previous discussions with Fransdal that Piburn wanted to find out "what instructions and communications [Lyons] had with BHGMHC and Tom Eachus during the interactive process and what authority was given in the negotiations."[3] Davis reminded Fransdal that Defendants would assert an attorney-client privilege, and advised Fransdal that "[i]f you serve the subpoena on Erin, we will move to quash it."[4] In addition, Davis suggested that "we could subpoena you for the purpose of testifying about your communications with your client" because "[t]hat is precisely what you have indicated you would be seeking from Erin Lyons."[5]

Fransdal responded a few minutes later, assuring Davis he would not ask Lyons questions that "invade the privilege." Instead, Fransdal explained "I will call Erin to confirm the communications that he and I had regarding the meeting with Dr. Piburn at his office, the meeting at his office, his receipt of the letter from Mayo clinic, the proposed attendance by Dr. Piburn with the BHGMHC board of directors and his communications about that meeting, then his transmission of the termination letter to me."[6] The next day, Davis asked Fransdal "[d]o you mean that you are going to ask Erin Lyons about his

---

[2] Affidavit of Marvin Piburn, M.D. (docket number 36-5) at 2, ¶ 8.

[3] Defendants' Exhibit A (docket number 35-2) at 2.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 2.

3

communications with YOU about the attendance of Piburn at the board of directors meeting?"[7] Fransdal responded within minutes stating "[o]f course."[8]

On July 13, Fransdal wrote to Davis indicating, among other things, that he had not heard from her "regarding the matter of Laura Folkerts and Erin Lyons appearance at trial, and whether you want me to subpoena them."[9] Fransdal advised Davis that if he did not hear from her by Monday, he would have them served. Davis responded a short time later indicating that "we will need to have a clear limine order to set the parameters so as not to get into any attorney-client privileged information in front of the jury."[10] Davis also suggested that "if you intend to questions [sic] Erin Lyons about the meeting and communications with you, I do not see how you do not become a witness in the case."[11] Fransdal responded a few minutes later, assuring Davis that he would not ask Lyons to testify about any attorney-client communications and, without addressing directly Davis' statement about him being a witness, concluded that "I do not see an issue here."[12]

On July 15, Davis sent Fransdal a letter summarizing the issue and opining that "[g]iven that you have clarified your intention to present evidence and testimony regarding communications between Erin Lyons and yourself, there is no way that I see to avoid you

---

[7] *Id.* at 1 (caps in original)

[8] *Id.*

[9] Defendants' Exhibit C (docket number 35-4) at 3. Laura Folkerts is an attorney serving on BHGMHC's Board of Directors.

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.* at 1.

4

being a witness in this case."[13] Accordingly, Davis asked Fransdal to withdraw from representing Piburn "due to your inevitable role as a witness in this case."[14]

On July 19, Davis sent an email to Fransdal, asking for a response so that she would know whether a motion to disqualify was required. In his response, Fransdal asserted that Lyons could testify as to uncontested facts and suggested that "[y]ou can and should stipulate to these facts."[15] Fransdal also claimed Davis had misrepresented the testimony that he would elicit from Lyons. According to Fransdal, "I have no intention of asking him about our verbal communications, except to confirm that he stated he would send a specific return to work proposal at the conclusion of the meeting with Dr. Piburn at his office."[16]

A few hours later, in a separate email chain, Fransdal advised Davis that he had reviewed the Iowa Rules of Professional Conduct and concluded that "I am not a necessary witness."[17] According to Fransdal, Lyons "is testifying about uncontested issues, and so would I."[18] In a response later that afternoon, Davis disputed Fransdal's assertion that Lyons' testimony would be undisputed. In response, Fransdal asserted that Lyons' testimony was "essentially foundation testimony for the emails and for the one meeting that was held."[19] Davis replied by asserting that "the central issue has come down to what was communicated between you and Erin Lyons in the negotiation (a/k/a interactive

---

[13] Defendants' Exhibit D (docket number 35-5) at 1.

[14] *Id.*

[15] Defendants' Exhibit E (docket number 35-6) at 1.

[16] *Id.*

[17] Defendants' Exhibit F (docket number 35-7) at 4.

[18] *Id.*

[19] *Id.* at 2.

5

process)."[20] Davis asserted that "the testimony of both Erin and you is necessary to establish what was communicated back and forth in that process."[21] Fransdal again asserted that "I am not a necessary witness for the above 15-minute meeting at Erin's office."[22]

On July 20, Fransdal sent Davis an email suggesting that "if you will agree to waive all foundation objections to the emails exchanged between me and Erin Lyons, then I will agree not to call him as a witness."[23] The next day, July 21, Defendants supplemented their RULE 26 disclosures by adding Erin Lyons.[24]

Late in the afternoon on July 21, Fransdal sent Davis an email stating he would be filing a motion to strike Lyons as a witness. Fransdal asserted that "[t]here is no way that Erin could testify about handling these 'negotiations' absent a waiver of the privilege. . . ."[25] Davis responded the same day stating that "[w]e are absolutely not waiving privilege. Erin Lyons would only be called to testify regarding communications with you during the negotiation process and your responses to him."[26] According to Davis, "[t]he issue is what did the clinic actually offer during the negotiations, and that is what he can testify about, as well as responsive communications from you and your client in the process."[27]

---

[20] *Id.* at 1.

[21] *Id.*

[22] *Id.*

[23] Plaintiff's Exhibit 1 (docket number 36-1) at 1.

[24] Plaintiff's Exhibit 3 (docket number 36-3) at 1.

[25] Plaintiff's Exhibit 6 (docket number 36-6) at 3.

[26] *Id.* at 1.

[27] *Id.*

## IV. DISCUSSION

Defendants now intend to call attorney Erin Lyons to testify regarding Defendants' attempts to accommodate Piburn's disability. On July 6, it was Piburn who intended to subpoena Lyons to testify regarding those discussions. Fransdal wrote that "of course" he intended to ask Lyons about their communications. In response, Defendants stated their intention to quash any subpoena served on Lyons. By July 19, however, both parties had reversed themselves completely. After the question of Fransdal being a witness was raised, he wrote that "I have no intention of asking [Lyons] about our verbal communications." By that time, however, Defendants had apparently considered the value of such testimony, and Davis wrote that "the testimony of both Erin and you is necessary to establish what was communicated back and forth in that process." Despite stating an intention just two weeks earlier to subpoena Lyons, Fransdal responded that he would be filing a motion to strike Lyons as a witness.

### A. Testimony of Erin Lyons

Before addressing the issue of whether Fransdal is disqualified from serving as Piburn's trial attorney, I believe I must resolve the issue of whether Defendants will be permitted to call Lyons as a witness at trial. In his motion *in limine*, Piburn argues that Lyons should not be allowed to testify "due to late disclosure as a witness."[28]

FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1) requires a party to provide the other parties with information regarding persons that the disclosing party may use to support its claims or defenses. RULE 26(e) requires a party to timely supplement its disclosures under RULE 26(a). RULE 37(c)(1) describes the sanction for noncompliance:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at

---

[28] Plaintiff's Motion *in Limine* (docket number 40) at 5.

a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

Here, Piburn identified Erin Lyons in his initial disclosures served on September 21, 2015.[29] In compliance with RULE 26(a), Piburn described the "subject" of Lyons' information as follows:

> Will testify about his involvement in communications to Dr. Piburn and his attorney regarding Dr. Piburn's attempts to return to work and receive accommodation for a disability in the Spring of 2015 prior to the time that Thomas Eachus issued a letter terminating the employment of Dr. Piburn.

Plaintiff's Initial Disclosures (docket number 36-2) at 3.

Erin Lyons was not identified in Defendants' RULE 26 disclosures served on October 1, 2015.[30] On July 21, 2016 — less than two months prior to trial — Defendants supplemented their RULE 26 disclosures and added Erin Lyons as a person having knowledge of discoverable information. In the proposed final pretrial order submitted to the Court in compliance with the Court's Trial Management Order, Defendants identify Erin Lyons as a trial witness.

In support of his argument that Lyons was not timely disclosed and should not be permitted to testify, Piburn cites *Troykna v. Cleveland Chiropractic Clinic*, 280 F.3d 1200 (8th Cir. 2002). There, the Court held that the district court did not abuse its discretion in prohibiting the defendant from calling witnesses who had not been included in the defendants' 26(a) disclosures and supplements. The Court found that the witnesses were not critical to the defense, their testimony was substantially duplicated by documentary evidence, and was only marginally relevant to the issues in dispute. *Id.* at 1205. Moreover, the Court held that the district court reasonably could have concluded that the

---

[29] Plaintiff's Exhibit 2 (docket number 36-2) at 3.

[30] Plaintiff's Exhibit 4 (docket number 36-4).

8

defendant's use of the undisclosed witnesses would have unfairly prejudiced the plaintiffs at trial. *Id.*[31]

The facts in this case are more akin to those found in *El Camino Resources, Ltd v. Huntington Nat. Bank*, 2009 WL 1228680 (W.D. Mich.). There, the defendant identified a person with knowledge (Horton) in its RULE 26(a) disclosures. Horton was not listed in the plaintiff's RULE 26(a) disclosures. The plaintiff sought to take Horton's deposition, but the defendant objected, in part, because the plaintiff had not identified Horton in its RULE 26(a) disclosures. The Court rejected the defendant's argument. The Court noted that "Horton's role in the case as a person with discoverable information was obvious to defendant at the outset and where defendant itself listed Horton in its RULE 26(a)(1) disclosure, the court can confidently conclude that plaintiffs' nondisclosure of Horton was harmless." *Id.* at *5. The Court cited *Troykna* for the proposition that "prejudice to the objecting party remains the hallmark of the harmlessness analysis." *Id.* at *4.

Turning to the facts in the instant action, I find that Defendants' supplemental disclosure under RULE 26(e) was timely, and their failure to name Erin Lyons in their initial RULE 26(a) disclosure was harmless. Obviously, Piburn and his attorney knew of Lyons' involvement in the case from the very beginning. The day before Piburn was fired, he and Fransdal met with Lyons to discuss a possible accommodation of Piburn's disability. In fact, Piburn identified Lyons on his RULE 26(a) disclosures. Moreover, as recently as one month ago, it was Piburn's intention to subpoena Lyons to testify regarding discussions between Lyons, Piburn, and Fransdal regarding a possible accommodation.

---

[31] The Court notes parenthetically that in *Harris v. CRST Van Expedited, Inc.*, 2015 WL 248963 (N.D. Iowa), the Court cited *Troykna* for the proposition that "[d]isclosure is required even if witnesses were 'known to a party either through the party's own discovery disclosures and responses or through the opposing party's discovery responses.'" However, that does not appear to be the Eighth Circuit's holding in *Troykna*. Rather, the *Troykna* opinion was simply stating the defendant's argument, citing the defendant's brief. 280 F.3d at 1205.

9

While until recently Piburn himself intended to call Lyons as a witness, Piburn nonetheless claims he is prejudiced by Defendants now calling Lyons as a witness because Piburn "was deprived of the opportunity to obtain discovery regarding Lyons by Defendants' late disclosure of him as a possible witness."[32] Piburn's claim is not supported by the evidence. In October 2015, counsel discussed Fransdal's request to take the depositions of Laura Folkerts and Erin Lyons. In a letter dated October 30, 2015, Davis expressed "serious concerns" about the depositions, noting that Lyons' communications with BHGMHC would be protected by the attorney-client privilege.[33] Davis advised Fransdal that the permissible scope of any deposition would have to be determined. There is no evidence suggesting Fransdal ever noticed Lyons' deposition or otherwise pursued the matter.

RULE 26(e)(1)(A) requires a party to timely supplement its RULE 26(a) disclosures "if the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing." Here, I find Defendants' supplemental disclosure was timely. Even if it was *not* timely, however, Lyons' involvement in the case and his knowledge of the circumstances was "otherwise known" to Piburn. Moreover, even *if* Defendants violated RULE 26(a) and (e), the nondisclosure was harmless and, therefore, the sanction found in RULE 37(c)(1) is inapplicable. *El Camino Resources*, 2009 WL 1228680 at *4-5; *Jackson v. Herrington*, 2011 WL 1750800, *2 (W.D. Ky.). Therefore, Defendants will be permitted to call Erin Lyons as a witness at trial.

### B. Disqualification of Mark Fransdal

The Court now turns to the more difficult question of whether Fransdal is disqualified from representing Piburn at trial. Defendants intend to call Erin Lyons to testify regarding what was said at the meeting between Piburn, Fransdal, and Lyons on

---

[32] Plaintiff's Motion *in Limine* (docket number 40) at 6, ¶ 24.

[33] Defendants' Exhibit G (docket number 35-8) at 1.

March 12 — the day before Piburn was fired. Defendants believe the evidence is critical in rebutting Piburn's claim that "Defendants failed to reasonably engage in an interactive process related to Dr. Piburn's requested reasonable accommodation."[34] Piburn will presumably testify regarding his recollection of the meeting, while Lyons will testify regarding his recollection. It is reasonable to assume the testimony of Piburn and Lyons will differ to a significant extent.

In the proposed final pretrial order, Defendants also listed Fransdal as a witness. At the hearing, Davis advised the Court that it was "not necessarily" her intention to call Fransdal, but she wanted the opportunity to cross-examine him "to the extent he did any testifying in his questioning of Lyons or other witnesses." Fransdal advised the Court that even if Lyons' version of the meeting differs substantially from Piburn's description of the meeting, "I wouldn't intend to inject myself as a witness at that point." According to Fransdal, "I would certainly be satisfied with Dr. Piburn's testimony on that issue."

Lyons, Piburn, and Fransdal met at 2:00 p.m. on May 12. At 4:35 p.m. on the same day, Fransdal sent an email to Lyons. At the hearing, Fransdal stated the email "confirmed various aspects" of the meeting and "I think I documented that communication adequately at that time." Piburn intends to introduce Fransdal's email as an exhibit at trial because it's part of the "flow of information" regarding the attempts to determine a reasonable accommodation.[35] Defendants apparently don't object to the email being introduced into evidence, and Davis emphasized that what was said at the May 12 meeting is "very key to the case." Davis also expressed concern that Fransdal may prejudice his own client if he doesn't act as a witness.

---

[34] Plaintiff's Amended Complaint (docket number 20) at 11, ¶ 78.

[35] The email described by Fransdal is not specifically identified in the Plaintiff's exhibit list attached to the proposed final pretrial order, although Exhibit 17 is described as "Correspondence and Emails Between the Parties."

11

I believe Piburn's intention to introduce an email authored by Fransdal on May 12, immediately following the meeting between Piburn, Fransdal, and Lyons, effectively makes Fransdal a witness in this case. That is, the email purports to set forth what was said by the participants to the meeting.[36] The email summarizes not only statements made by Piburn and Fransdal, but also purports to describe statements made by Lyons. At this point, it is unknown whether Lyons will subscribe to the description of the meeting found in Fransdal's email.

The Iowa Rules of Professional Conduct limit a lawyer's ability to appear at trial if it is likely the lawyer will be a necessary witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Iowa R. of Prof'l Conduct 32:3.7. The comment to Rule 32:3.7 notes that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client."[37]

Defendants argue that allowing Fransdal to appear on Piburn's behalf at trial would violate Iowa R. of Prof'l Conduct 32:3.7.[38] Fransdal argues he is not disqualified from appearing as Piburn's attorney at trial because he is not "likely to be a necessary witness." Furthermore, Fransdal argues that *if* he is required to testify, his testimony would relate

---

[36] A copy of the email was attached to Defendants' motion for summary judgment (docket number 24 at 85-86).

[37] Iowa R. Prof'l Conduct 32:3.7, cmt. 1.

[38] The Iowa Rules of Professional Conduct govern all members of the bar appearing in the Northern District of Iowa. *See* Local Rule 83.1.g.1.

to "an uncontested issue." Finally, Fransdal argues that his disqualification to appear as Piburn's advocate at trial would work a "substantial hardship" on Piburn.

The Iowa Supreme Court recently described the standard to be applied in evaluating a motion to disqualify an attorney.

> The right of a party to choose his or her own attorney is important, but it must be balanced against the need to maintain "the highest ethical standards" that will preserve the public's trust in the bar and in the integrity of the court system. A court must necessarily balance these two competing interests when determining whether to disqualify an attorney. In doing so, the court "must also be vigilant to thwart any misuse of a motion to disqualify for strategic reasons." When we evaluate motions to disqualify an attorney, we use our Iowa Rules of Professional Conduct as the starting point.

*NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 482 (Iowa 2016) (internal citations omitted).

In *Williams v. Borden Chemical, Inc.*, 501 F. Supp. 2d 1219 (S.D. Iowa 2007), the Court discussed what constitutes a "necessary witness."

> [T]he Court believes the words "necessary witness" should be given a practical construction in terms of the importance of the lawyer's testimony to establishing a material fact rather than the sufficiency of the evidence in the absence of the lawyer's testimony. By this standard Mr. Culp is a necessary witness as he is the only witness who can back up Mr. Williams' version of what was said at the meeting.

*Williams*, 501 F. Supp. 2d at 1221 n.3 (also recognizing "there is some authority that a lawyer is a 'necessary witness' only if the lawyer is the only one available to testify on the subject," citing *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (applying Missouri law)).

Both parties apparently agree that the May 12 meeting is an important piece in solving the puzzle of whether Defendants made a good faith attempt to accommodate Piburn's disability. Until it became apparent that Lyons' testimony may require Fransdal

13

to withdraw, Piburn intended to subpoena Lyons to appear at trial and testify regarding that meeting. Defendants have also now come to the conclusion that the May 12 meeting is "key" in this case. Only three people were present at the meeting. It can be expected that Piburn and Lyons will give different versions of what was said. Piburn apparently intends to introduce an email written by Fransdal immediately following the hearing, purporting to describe what was said. Under these circumstances, the Court concludes that Fransdal is a "necessary witness."

Iowa Rule of Professional Conduct 32:3.7 does not require Fransdal to withdraw as Piburn's trial attorney, however, if his testimony "relates to an uncontested issue" or his disqualification would be a "substantial hardship" on Piburn. Iowa R. Prof'l Conduct 32:3.7(a)(1) and (3). I do not believe that either exception applies in this case. What was said at the May 12 meeting is clearly not an "uncontested issue." Furthermore, I do not believe Fransdal's disqualification would be a "substantial hardship" to Piburn.

In his resistance to the motion to disqualify, Piburn asserts that this is a "highly technical" case and he has a "long-standing professional relationship" with Fransdal. I disagree that this case is "highly technical." Lawsuits alleging a violation of the ADA are commonplace in federal court. Nothing about this case requires a lawyer representing Piburn to have special training or expertise. There are any number of competent lawyers who are able to represent plaintiffs in ADA cases.

Furthermore, I do not believe Fransdal's disqualification will work a substantial hardship on Piburn. In a supporting affidavit, Piburn states he met Fransdal on April 30, 2014, when the issue of Piburn's return to work at BHGMHC initially came up.[39] Since

---

[39] Affidavit of Marvin Piburn, M.D. (docket number 36-5) at 1, ¶ 2.

that time, Piburn has worked exclusively with Fransdal. In his affidavit, Piburn expressed a "high level of trust" in Fransdal.[40]

I fully recognize that "[a] party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca*, 463 F.3d at 833. The rule also serves the important purpose, however, of protecting the integrity of the court proceeding. *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 2015 WL 3505793, *20 (S.D. Ohio). "[W]here an attorney has observed or participated in events giving rise to facts disputed at trial, a jury may misinterpret his questions or summation as testimony conveying his own version of those events." *Id.* When an attorney acts as both a witness based on personal knowledge and as a trial attorney, "the Court runs the risk that a jury will assign too much, or possibly too little, weight to the lawyer's testimony." *Spotted Cat v. Bass*, 2014 WL 4072024, *3 (E.D. La.).

In summary, because Fransdal participated in a meeting to discuss a possible accommodation of Piburn's disability just one day prior to Piburn's termination, and because Piburn intends to offer an email written by Fransdal immediately after the meeting purporting to describe what was said, I believe Fransdal is a necessary witness. Because no exception applies, I find that Iowa Rule of Professional Conduct 32:3.7 prohibits Fransdal from representing Piburn at trial. Because trial is imminent, if Piburn files a motion to continue the trial it will be granted. The Court also notes that Fransdal may continue to represent Piburn in all pretrial proceedings.[41] *Droste v. Julien*, 477 F.3d 1030 (8th Cir. 2007); *McFarland v. McFarland*, 2010 WL 547233 (N.D. Iowa).

---

[40] *Id.*, ¶ 5.

[41] Because Fransdal is prohibited from acting as trial counsel pursuant to Iowa Rule of Professional Conduct 32:3.7, the Court finds it unnecessary to discuss Defendants' alternative argument that Fransdal should be disqualified under the "unsworn witness rule."

15

## V. ORDER

IT IS THEREFORE ORDERED that the Motion to Disqualify Plaintiff's Counsel (docket number 35) is **GRANTED**. Attorney Mark Fransdal will not be permitted to represent Plaintiff at trial. Mr. Fransdal may continue to represent Plaintiff in all pretrial proceedings.

DATED this 24th day of August, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA